## MILLS JUDSON *v.* J. L. LEWIS, Sheriff, et al.

A sale will not defeat an attachment which is levied before delivery.

To constitute a valid delivery, the consent of the seller must be made to appear. The mere taking possession of the thing sold by the purchaser, without the consent of the seller, does not amount to a delivery.

The plaintiff brought suit against the sheriff for a trespass, in levying certain attachments against a third person, upon his property. The sheriff called the attaching creditors in warranty. The plaintiff had purchased the property of the debtor. *Held :* That, as the attachments were levied before the delivery of the property to the plaintiff, he had no right to obstruct, or embarrass, the process of the court against the debtor.

APPEAL from the Fourth District Court of New Orleans, *Strawbridge,* J. *Hoffman* and *Ogden,* and *Benjamin* and *Micou,* for plaintiff. *J. R. Grymes, J. B. Bemiss, T. L. Bayne,* and *M. M. Cohen,* for defendants. The judgment of the court (*Eustis,* C. J., absent,) was pronounced by

JUDSON
v.
LEWIS.

ROST, J. The plaintiff sued the sheriff of the parish of Orleans as a trespasser, for having seized, under writs of attachment against *John S. Caldwell*, an absconding debtor, movable property, which he claims under an authentic act of sale from *Caldwell*, and delivery before the seizure. On the call of the defendant, the plaintiffs in the attachment suits, made themselves parties to the record, and joined issue with *Mills Judson*. They subsequently entered into an agreement with him, that the property attached should be sold by the sheriff; the proceeds to be held by him, subject to the respective claims of the parties to the agreement, and without prejudice to their rights. The property was accordingly sold, and the plaintiff became the purchaser, at the price of $5750, cash. The district judge appears to have considered, that the sale, under which *Judson* claims, was, in fact, an informal pledge, given to secure a loan of $5000, upon which it is shown that six hundred dollars have been refunded; and being of opinion, that the attaching creditors had failed to make out their case, he gave judgment in favor of *Judson*, for $4400, to be paid out of the proceeds of the property. The attaching creditors have appealed.

The agreement entered into between the plaintiff and the attaching creditors, and the sale under it of the property attached, amount to a waiver of the claim of damages against the sheriff. He is now a mere stakeholder; and the only question before us, is in relation to the distribution of the funds in his hands. We accede fully to the argument of the plaintiff's counsel, that the agreement is not to be considered as admitting the respective claims of the parties to it; and that the proof required of them is the same, as if no such agreement had been made.

Whatever be the nature of the plaintiff's title, it is incumbent upon him to establish, beyond all reasonable doubt, that he was in possession of the property under it when it was first attached; for, if he was not, after the attachment, the property was in the custody of the law, and could no longer have been delivered to him. The district judge considered the possession of the plaintiff most equivocal, and doubted whether it had preceded the first attachment. The circumstances under which the plaintiff pretends to have taken possession, after the vendor had absconded, are of so suspicious a character, that we cannot give to the testimony adduced by him, on this part of the case, greater weight than our learned brother gave it; and it would, perhaps, be sufficient to say, that the evidence of anterior possession is not such, as excludes all reasonable doubts of the reality of that fact.

But there is another difficulty in the way of the plaintiff, resulting from the nature of his contract with *Caldwell*, as ascertained by the evidence of his own witnesses, and the manner in which it has been partially executed. The plaintiff is a money dealer, and did not intend to become the keeper of a dram shop and ten-pin alley. The act of sale was required by him, under the belief, that it would secure a loan of $5000, which he made to *Caldwell*, at a rate of interest, which is ignored. The sale bears date the 2d day of May, 1850. It is in proof, that after that date, *Caldwell* remained in possession, as before, until the beginning of June, when he absconded; and that, during that time, he was paying the plaintiff two hundred dollars a week on account. It is manifest, that a loan to be refunded, in this manner, excludes the idea that the possession was ever to be delivered to the creditor. *Caldwell* had no other means of refunding the loan, than those arising from the profits of the Phœnix House; and he could only realize those profits, by retaining the possession of the establishment. The intention of the parties is placed beyond all doubt, by the testimony of *Caldwell's*

legal adviser. He states, that *Caldwell* remained in possession, as owner, up to the time of his departure; and that, before he went away, he left instructions to him, the witness, and to his clerk and agent, *Turnbull*, in relation to the administration of the property in the Phœnix House, during his absence. He said he was going to California, to get some money owing to him there, and would soon return; and he requested his attorney to keep off, if possible, his creditors, till his return; when he would pay them all. The plaintiff was one of those creditors, and his claim was the largest of any; so that, so far from *Turnbull* having authority to make the delivery to him, or to allow him to take possession, he was ordered to retain the possession himself, and positive instructions were given to the attorney to keep off the plaintiff and his claim, if possible.

The facts, in relation to the delivery, are as follows: After making three weekly payments, *Caldwell* absconded, without the knowledge, and to the great consternation of the plaintiff. On the next day, the plaintiff went to the Phœnix House, as an act of possession, and sent a notary there to make an inventory.

Article 2453, C. C., provides, that the tradition or delivery of movable effects, takes place either by their real tradition, or by the delivery of the keys of the building in which they are kept, or even by the bare consent of the parties, in certain specified cases. Here, there was no real tradition or delivery of keys by the vendor. Under the nature of his contract with the plaintiff, his consent cannot be presumed; and the evidence shows, most conclusively, that he never intended to make that delivery. We conclude, therefore, that no delivery has been shown.

The views of the district judge, in relation to the evidence, did not differ from our own; and he expressed the wish that he had it in his power to extend to the plaintiff, the rule applied in the case of *Nicholls* v. *Botts*, 6th Ann. 437. But he thought he was not authorized to do so, because the attaching creditors had omitted to prove their claims. We are unable to assent to this view of the law as it bears upon the present case. The ruling of the court would undoubtedly be correct, if the plaintiff had been in possession of the property when the attachments were levied upon it. But as he was not, he has no right to obstruct or embarrass the process of the court; and against him, the writ sufficiently justifies the seizure. The law of the case is laid down as follows, by Mr. Greenleaf: "If the plaintiff has never had possession of the goods, so that the sale, whatever it was, is incomplete for want of delivery, the proof of this fact, alone, will suffice to defeat the action against the sheriff, for taking the goods of the plaintiff. But if the transaction was completed in all the forms of law, and is assailable only on the ground of fraud, the sheriff must first entitle himself to impeach it, by showing, that he represents a private creditor of the debtor; and this is done, by any evidence which would establish this fact, in an action by the creditor against the debtor himself, with the additional proof of the process in the sheriff's hands, in favor of that creditor, under which the goods were seized." 2 Greenleaf Ev., 597. The appearance of the attaching creditors, on the call of warranty of the sheriff, does not change the legal aspect of the case.

We are of opinion, that the plaintiff has no claim upon the fund in the hands of the sheriff, and that it must remain subject to such judgments as the attaching creditors may obtain against *John S. Caldwell*, and be distributed among them according to their rank.

It is therefore ordered, that the judgment in this case be reversed. It is further ordered, that there be judgment against the plaintiff, on his claim upon

JUDSON
v.
LEWIS.

the fund in the hands of the sheriff; and that said fund there remain for distri-' bution among the attaching creditors, subject to the order of the Fourth District Court, from which the first writ of attachment issued. It is further ordered, that the plaintiff, *Mills Judson*, pay costs in both courts.

SLIDELL, J., dissenting. That *Judson* is a creditor for a large sum of money actually advanced to *Caldwell*, is established beyond dispute; and it seems to me just, that he should have the fund in court applied to his claim, unless the persons claiming as attaching creditors have shown a better right. They have omitted to show such right.

If my brethren had thought it consistent with precedent, and in view of the peculiar circumstances of this litigation, to remand the whole cause, and so to give the defendants, by a new trial, an opportunity of remedying the oversight they have committed, I might have yielded to such a disposition of the cause. But I am unable to concur in the decree now made.